UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-111-TBR

**JOHN FRANCIS HALL,**                                                                 **PLAINTIFF**

**v.**

**JOHN T. STANKEY,**                                                                    **DEFENDANT**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on several motions filed by Plaintiff John F. Hall, including a "Motion to Expunge Waiver of Service of Summons," [DN 8]; a "Motion for Demand the Right to a Jury Trial," [DN 10]; a "Motion to Deny Defendant's Motion for Extension of Time," [DN 11]; a "Motion for Enter a Default Judgement Against the Defendant," [DN 13]; a "Motion for Continuation of Claims," [DN 15]; a "Motion for Additional Claims," [DN 16]; "Motion for to Amend Complaint to Add 47 U.S.C. § 227(B)(3)," [DN 18]; and "Motion for Schedule a Jury Trial at Next Available Date," [DN 21]. Defendant John T. Stankey has also filed a Motion for Extension of Time to file his answer, [DN 9], and a Motion to Dismiss, [DN 17]. Each of the above-listed motions is ripe for review. The Court rules as follows.

### I.    BACKGROUND

Plaintiff, acting pro se, initiated this action on August 13, 2021. [DN 1]. In his Complaint, he seeks "$93,800 for 134 interstate harassing phone calls in violation of 47 U.S. Code 223(1)(c) and Truth in Caller ID Act of 2009, Section 227(c)(1)." *Id.* at 5. In support of this

1

claim, he alleges that Defendant Stankey, the C.E.O. of AT&T, Inc., "has waged a grossly intentional and malicious harassment war against me, to force me to give up my home phone line that I have maintained for 43 years." *Id.* at 5. He appears to allege that Defendant is responsible for hundreds of harassing phone calls, which Plaintiff claims were made in an attempt to force him to give up his home phone line. *Id.* He asserts 143 claims against Defendant, one for each of the harassing phone calls. *Id.* at 6–23. In addition to the $93,800 of alleged actual damages, Plaintiff also seeks injunctive relief and $375,200 in punitive damages. *Id.* at 24.

## II.   ANALYSIS

### A. Plaintiff's Motion to Expunge Waiver of Service of Summons, [DN 8]; Defendant's Motion for Extension of Time, [DN 9]; and Plaintiff's Motion to Deny Defendant's Motion for Extension of Time, [DN 11]

On August 30, 2021, Defendant filed a Waiver of the Service of Summons, [DN 6], as permitted by Federal Rule of Civil Procedure 12. Under that rule, a defendant must serve an answer "within 21 days after being served with the summons or complaint" *or* "if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent." Fed. R. Civ. P. 12(a)(1)(A). Defendant completed a standard Waiver of the Service of Summons (form AO 399) on August 30, 2021, which he asserted had been served to him that day, thereby allowing him sixty days from August 30, 2021 to file a responsive pleading. [DN 6]. That same day, Plaintiff filed a copy of the Summons and Proof of Service form, stating that the United States Postal Service delivered the summons "by restricted delivery to John T. Stankey on August 17, 07:12 AM and was picked up at the postal facility in Dallas, Texas." [DN 7, p. 2]. He further states that he has not received the green return receipt card for the certified mailing, and "[i]t may have gotten lost in the return mail." *Id.*

2

Plaintiff apparently takes issue with Defendant's waiver form because he believes Defendant was served on August 17, 2021 and therefore had only twenty-one days from that date to file a responsive pleading. However, Defendant's Motion for Extension of Time, [DN 9], provides further insight into this misunderstanding. In that motion, defense counsel represents that she was contacted on August 27, 2021 by Plaintiff, who emailed her expressing concern that his restricted mail delivery "would be returned [] unsigned." *Id.* at 2; *see also* [DN 9-1, pp. 4–5 (Aug. 27, 2021 email)]. Plaintiff and defense counsel then spoke by phone on August 30, 2021, and defense counsel offered to file a waiver of service of process and accept service of the complaint on behalf of Defendant. [DN 10, p. 2]. In an August 30, 2021 follow-up email, defense counsel stated that she would file the waiver that same day. [DN 9-1, p. 13]. Plaintiff replied to that email, thanking defense counsel for providing the waiver. *Id.* at 16. Defense counsel replied, advising Plaintiff that she had filed the waiver. *Id.*

Plaintiff thereafter filed his Motion to Expunge Waiver of Service of Summons, [DN 8]. As stated above, he claims that Defendant was served by certified mail on August 17, 2021; however, he provides no proof that Defendant received the mail, and he acknowledges that he does not have the green return receipt card that would prove delivery. *Id.* Instead, the email exchanges between Plaintiff and defense counsel clearly demonstrate that Defendant agreed to waive service of process. This is expressly permitted under Rule 12. Further, without such waiver, there is no proof that Defendant was served in compliance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(e). As Defendant acknowledges, his waiver of service cures the defective attempted service. *See* [DN 9, p. 4]. Because Defendant's waiver of service is in compliance with Rule 12, the Court will deny Plaintiff's Motion to Expunge Waiver of Service of Summons, [DN 8].

In response to Plaintiff's Motion to Expunge Waiver of Service of Summons, [DN 8], and out of an abundance of caution, Defendant filed a Motion for Extension of Time, seeking an order extending his time to file a responsive pleading to October 29, 2021. [DN 9]. Plaintiff responded with a Motion to Deny Defendant's Motion for Extension of Time, again arguing that he served Defendant by certified mail on August 17, 2021. [DN 11]. As noted above, there is no proof of such service in the record, but there is proof that Defendant waived service pursuant to Rule 12. [DN 6]. Defendant therefore had sixty days from August 30, 2021—or until October 29, 2021—to file his responsive pleading. Defendant's Motion to Dismiss, [DN 17], was filed on October 28, 2021. Because the Court has already concluded that Defendant properly waived service under Rule 12, thereby entitling him to a sixty-day response window, that responsive pleading was timely filed. Accordingly, the Court can deny as moot Defendant's Motion for Extension of Time, [DN 9], and Plaintiff's Motion to Deny Defendant's Motion for Extension of Time, [DN 11].

### B. Plaintiff's "Motion for Enter a Default Judgement Against the Defendant," [DN 13]

Plaintiff has moved for default judgment, again arguing that Defendant was served on August 17, 2021 and had twenty-one days from that date in which to file his responsive pleading. Defendant has responded in opposition, [DN 14]. As the Court has already explained, there is no proof of service on Defendant on August 17, 2021; instead, Defendant filed a waiver of service on August 30, 2021, [DN 6], and therefore had sixty days from that date to file his responsive pleading. Thus, Defendant's responsive pleading, [DN 17], was timely filed. Plaintiff's "Motion for Enter a Default Judgement Against the Defendant," [DN 13], is therefore without merit and will be denied.

Furthermore, even if service was effectuated on August 17, 2021, the Court would not grant default judgment. Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the clerk's entry of default, the plaintiff may seek a default judgment from the Court. *See* Fed. R. Civ. P. 55(b)(2). In this case, Plaintiff has not requested a clerk's entry of default prior to his request for default judgment. Regardless, it would not be appropriate enter default judgment against Defendant. Defendant has actively attempted to defend himself in this case, a fact that is apparent on the face of the record. Simply stated, default judgment would not be appropriate.

### C. Defendant's Motion to Dismiss, [DN 17]

Defendant has filed a Motion to Dismiss arguing that (1) dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; (2) in the alternative, dismissal is appropriate under Rule 12(b)(6) for failure to state a claim; and (3) the proper defendant in this case is BellSouth Telecommunications, LLC.[1] [DN 17-1]. In response, Plaintiff filed a "Motion to Deny Defendant's Motion to Dismiss," which was properly docketed as a response to Defendant's motion. [DN 19]. Defendant has replied, [DN 20], and this matter is therefore ripe for review.

#### 1. Personal Jurisdiction

Defendant first argues that this Court lacks personal jurisdiction over Defendant, and the matter must therefore be dismissed under Rule 12(b)(2). Under that rule, Plaintiff bears the burden of showing that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). To do so, Plaintiff "may not stand on his pleadings but must, by affidavit or

---

[1] The Court will not provide any advisory opinions on which person or entity is an appropriate defendant.

5

otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989)). The Court has discretion to select which method it will follow. *Id.* In this case, the Court has reviewed the parties' briefs, Defendant's affidavits, and the remainder of the record, and has determined that no evidentiary hearing is necessary.[2]

When no evidentiary hearing is held, a plaintiff's burden is "relatively slight" and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)) (internal quotation marks omitted). To satisfy this burden, Plaintiff must "establish[] with reasonable particularly sufficient contacts between [Defendant] and the forum state to support jurisdiction." *Dobronski v. SunPath Ltd.*, Case No. 19-13094, 2020 WL 8840311, at *6–7 (E.D. Mich. July 27, 2020) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)) (internal quotation marks omitted). In considering whether Plaintiff has met his burden, the Court views the pleadings and affidavits in the light most favorable to Plaintiff, and it "should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).

Notably, this Court "may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon*

---

[2] The Court also notes that neither party has requested jurisdictional discovery or an evidentiary hearing, and the Court therefore understands that the parties consent to resolving this matter on the written submissions.

6

*Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). In Kentucky, "the proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, the Court considers Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Id.* If it does not, then the Court does not have personal jurisdiction over the defendant. *Id.* However, if the long-arm statute's requirements are met, the Court turns to the constitutional due process test "to determine if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights." *Id.*

### a. Kentucky's Long-Arm Statute

Kentucky's long-arm statute lists nine categories of conduct that may subject a non-resident defendant to the personal jurisdiction of a court in Kentucky. *See* Kentucky Revised Statute ("KRS") § 454.210. Plaintiff cites the following provisions of the long-arm statute in support of his position: Section 454.210(2)(a)(1), "[t]ransacting any business in this Commonwealth," and section 454.210(2)(a)(2), "[c]ontracting to supply services or goods in this Commonwealth." To assert personal jurisdiction over Defendant under these provisions of the Kentucky long-arm statute, Plaintiffs must show that Defendant's conduct falls within these provisions and his claim "arises from" that conduct. *Carter v. Paschall Truck Lines, Inc.*, 388 F. Supp. 3d 883, 888 (W.D. Ky. 2019) (citation omitted). To establish that his claim "arises from" the Defendant's transacting of business in Kentucky or his contracting to supply services or goods in Kentucky, Plaintiff must show a "reasonable and direct nexus" between that conduct-causing injury and Defendant's activities in Kentucky. *Id.* (citations omitted).

In this case, Plaintiff claims that "[Defendant's] company provides me with digital subscriber line (DSL) Internet access" and "cell phone service that includes unlimited nationwide calling." [DN 19, p. 1]. He also notes that "AT&T operates a (sic) AT&T retail store in Hopkinsville, Kentucky where it sells me the accessories and services for my cell phone." *Id.* On this point, it is important to note that Plaintiff has named only the CEO of AT&T, Inc. as a defendant; he has not named AT&T, Inc. or any other entity as a defendant in this case. However, he argues that these entities "provide services in Kentucky subject to the dictates of the defendant, to which they pay him for the right to use the name of the corporation that he controls." *Id.* at 2. Plaintiff does not provide any affidavits or evidentiary proof to support this assertion; rather, he argues that "[p]roof of this is the power of the defendant to dictate contract terms to AT&T Kentucky and AT&T Intellectual Property." *Id.*

These allegations, even if accepted as true, are insufficient to establish personal jurisdiction over Defendant. As noted above, Defendant is the CEO of AT&T, Inc. Defendant represents that AT&T, Inc. is a holding company and the ultimate parent company of BellSouth Telecommunications LLC and AT&T Mobility LLC, the two entities that provide DSL and cell service to Plaintiff. *See* [DN 17-2]. Even assuming that Plaintiff could establish personal jurisdiction over AT&T, Inc. (which is not a named defendant), jurisdiction over a corporate officer like Defendant "cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 697–98 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)) (internal quotation marks omitted). Instead, Plaintiff must prove Defendant's "active participation" in the allegedly tortious conduct. *Id.*; *see also id.* at 698 (noting that a court may exercise personal jurisdiction

8

over an out-of-state agent that is "actively and personally involved it the conduct giving rise to the claim").

Plaintiff's allegations fall short of establishing Defendant's active participation in the alleged TCPA violations. He does not allege that Defendant personally made the calls to Plaintiff, or that he instructed anyone to make the calls, or that he otherwise initiated the calls. He does not allege that Defendant authorized the calls. Rather, he bases his argument on the fact that Defendant is an officer of the parent company of two entities that provide Internet and cellular services[3] to Plaintiff in Kentucky, and he alleges—without factual support—that Defendant, as CEO, has the power to stop these calls. [DN 19, p. 2]. He does not otherwise allege or provide any evidence that Defendant (or AT&T, Inc., for that matter) transacts any business in Kentucky or contracts to supply services or goods to Kentucky.

Defendant, on the other hand, has provided an affidavit stating that AT&T, Inc., as a mere holding company, does not transact any busines in Kentucky and has never provided any services to Plaintiff. [DN 17-2]. Defendant provides another affidavit certifying that he resides in Texas, has not traveled to Kentucky for any purpose, business or personal, within the last five years, and does not own any property or maintain any offices in Kentucky. *See* [DN 17-2; DN 17-3]. Having reviewed the unsupported allegations of Plaintiff and the affidavits of Defendant, the Court finds that Defendant's connection to Kentucky is attenuated and distant, at best, and does not trigger personal jurisdiction under Kentucky's long-arm statute.

Accordingly, the Court finds that Plaintiff failed to satisfy his burden of demonstrating personal jurisdiction under Kentucky's long-arm statute. As a result, this Court cannot exercise personal jurisdiction over Defendant. Regardless, even if Kentucky's long-arm statute is

---

[3] Notably, Plaintiff does not allege that his DSL Internet service or cell service are in any way connected to the harassing calls, which are made to his home land line.

triggered, the Court finds that Plaintiff's claims would ultimately fail under the federal due process analysis, as explained below.

### b. Federal Due Process

The Court's exercise of personal jurisdiction satisfies due process when the defendant has sufficient minimal contacts such that "traditional notions of fair play and substantial justice are not offended." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant's conduct must be such that he or she "should reasonably anticipate being hauled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). To satisfy this "minimum contacts" requirement, the plaintiff must demonstrate either general or specific jurisdiction. *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006). General jurisdiction is triggered by continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (citation omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). To trigger specific jurisdiction—i.e., jurisdiction for the specific claims asserted—those claims must arise out of or be related to activities that were significant and "purposely directed" by the defendant at a resident of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted).

In this case, Plaintiff has failed to allege the facts necessary to establish either general or specific jurisdiction. As noted above, Defendant has provided affidavits explaining that Defendant does not reside in Kentucky; has no offices or property in Kentucky; and has not been physically present in Kentucky during the relevant time period. [DN 17-3]. Defendant's affidavits also clarify that AT&T, Inc. is a mere holding company and does not conduct any business in Kentucky, nor does it provide any services to Plaintiff. [DN 17-2]. Plaintiff has not

provided any evidence—or even allegations—to counter these affidavits. *See generally SunPath*, 2020 WL 8840311, at *5 (explaining that Plaintiff's allegations may suffice to prove personal jurisdiction where no evidentiary hearing is held). Plaintiff has not alleged that Defendant has had the "continuous and systematic contacts" necessary to trigger general jurisdiction. *See, e.g.*, *Aristech Chemical*, 138 F.3d at 627 (citation omitted). As for specific jurisdiction, he has not identified any relevant significant activities on the part of Defendant that were "purposefully directed" to Plaintiff. *See Burger King Corp.*, 471 U.S. at 472–73 (citation omitted). In fact, other than Defendant's title as CEO of the holding company of two entities that provide Internet and phone services to Plaintiff—two services that are apparently unrelated to the alleged misconduct—Plaintiff has failed to establish any connection between Defendant and the harassing phone calls. Accordingly, the Court finds that "traditional notions of fair play and substantial justice" would be offended by its exercise of personal jurisdiction over Defendant. *See Int'l Shoe Co.*, 326 U.S. at 316.

### 2. Failure to State a Claim

Even if this Court had personal jurisdiction over Defendant Stankey, this matter would still be subject to dismissal for "failure to state a claim under which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1993)). The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F.

11

App'x. 369, 371 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009)). On this point, the Court acknowledges that pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with pro se complainants, however, "does not require [the Court] to conjure up unpled allegations," or to create a claim for a pro se plaintiff. *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted); *see also Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

In his complaint, Plaintiff cites to two statutes: 47 U.S.C. § 223(1)(c) and 47 U.S.C. § 227(c)(1). [DN 1, p. 5]. Neither provides a private right of action. Section 223(1)(c) does not exist, and § 227(c)(1) does not contain any prohibitions on conduct; rather, that provision pertains to the FCC's rulemaking procedures relating to the protection of subscriber privacy rights. Plaintiff has therefore failed to identify the statutory provisions upon which he relies.

Nevertheless, Defendant, in a good faith effort to resolve this matter, has identified two statutes that Plaintiff may have intended to cite: 47 U.S.C. § 223(a)(1)(C) and 47 U.S.C. § 227(e)(1). [DN 17-1, p. 13]. However, even if the Court construes the complaint liberally and finds that Plaintiff intended to cite those provisions, neither statute provides a plausible cause of action in this case. Section 223(a)(1)(C)[4] is a provision of the Communications Decency Act ("CDA"), and as such, it is a criminal statute that cannot be enforced by a private actor like Plaintiff. *See Ashland Hospital Corp. v. Int'l Brotherhood of Electrical Workers Local 575*, 807 F. Supp. 2d 633, 644–45 (E.D. Ky. 2011) ("It is well settled . . . that the CDA does not authorize a private right of action." (citations omitted)). Section 227(e)(1)[5], on the other hand, is the Truth

---

[4] That provision prohibits one from "mak[ing] a telephone call or utilize[ing] a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person." 47 U.S.C. § 223(a)(1)(C).

in Caller ID Act, a subsection of the Telephone Consumer Protection Act ("TCPA"). That provision makes it unlawful "to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." At first glance, this provision could be relevant, as Plaintiff alleges that the caller hid his identity by displaying disconnected or out-of-service numbers on the caller ID. However, at least one other district court within the Sixth Circuit has held that Section 227(e) does not provide for a private right of action, a position that several other district courts have taken as well. *See SunPath Ltd.*, 2020 WL 8840311, at *6–7; *Dobronski v. Selectquote Insurance Services*, Case No. 2:19-cv-12798, 462 F. Supp. 3d 784, 789–90 (May 27, 2020) (reviewing persuasive case law from other courts). Accordingly, Plaintiff's complaint should be dismissed for failure to state a claim.

 Further, even if Plaintiff successfully cited an appropriate provision of the TCPA, he has failed to sufficiently allege Defendant's personal involvement in the alleged TCPA violations. Other district courts, including courts within the Sixth Circuit, have acknowledged that a corporate officer may be held personally liable for violations of the TCPA where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2021 WL 4074620, at *8 (W.D. Mich. June 21, 2012) (quoting *Texas v. Am. Blastfax*, 164 F.Supp.2d 892, 898 (W.D. Tex. 2001)). Thus, courts have found that a plaintiff fails to state a claim where he fails to plausibly allege that the defendant "had any direct, personal participation in the calls directed at" the plaintiff. *See, e.g.*, *Rucker v. Nat'l Automotive Fin. Servs LLC*, No. 20-16377-MAS-TJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021); *Bank v. Simple Health Plans, LLC*, No. 18-6457, 2019 WL 7878570, at *6 (E.D.N.Y. Dec. 12, 2019). Along that same vein, courts "have

consistently found that conclusory allegations that corporate officers personally participated in violations of the TCPA are insufficient to state a claim." *Bank*, 2019 WL 7878570, at *7 (citing *Lucas v. Gotra*, No. 18-CV-664, 2019 WL 3349957, at *7 (S.D. Ohio July 25, 2019), *adopted by*, 2019 WL 3753245 (S.D. Ohio Aug. 8, 2019); *Cunningham v. Prof'l Educ. Inst., Inc.*, No. 17-CV-894(ALM)(CAN), 2018 WL 6709515, at *4 (E.D. Tex. Nov. 5, 2018)).

In the present case, Plaintiff's allegations, even if accepted as true, do not demonstrate that Defendant personally participated in any of the alleged TCPA violations. For example, he alleges that Defendant has "instigated, orchestrated and permitted from telecommunication facility under his control, to make interstate harassing telephone calls to my home phone." [DN 1, p. 6]. Courts have consistently held that such threadbare allegations are insufficient to state a TCPA claim against a corporate officer, as noted above. *See, e.g.*, *Lucas*, 2019 WL 3349957, at *7 (recommending dismissal where the plaintiff merely alleged that corporate officers "personally formulated, [or] directed, [or] controlled, [or] had the authority to control, or participated in the acts and practices of [the corporation]"). Plaintiff has therefore failed to state a claim for which relief can be granted.

The Court recognizes that Plaintiff has moved to amend his complaint; however, his proposed amendments would not cure the defects in the Complaint, and the Court will deny those motions as futile, as explained in more detail below. Accordingly, because the Court lacks personal jurisdiction over Defendant under Rule 12(b)(2), or in the alternative, because Plaintiff has failed to state a claim under Rule 12(b)(6), the Court will grant Defendant's Motion to Dismiss, [DN 17].

> **D. Plaintiff's "Motion for Continuation of Claims," [DN 15]; "Motion for Additional Claims," [DN 16]; and "Motion for to Amend Complaint to Add 47 U.S.C. § 227(B)(3)," [DN 18]**

Plaintiff has filed three separate motions seeking to add claims to his complaint. The first two—his "Motion for Continuation of Claims," [DN 15], and "Motion for Additional Claims," [DN 16]—add additional claims under the Truth in Caller ID Act, 47 U.S.C, § 227(e). He again alleges that the harassing phone calls to his home phone line display disconnected or out-of-service numbers on his caller ID, in violation of the Act, and cites to additional dates on which such calls occurred. *See, e.g.*, [DN 15, p. 2]. However, Plaintiff made virtually identical allegations in his first complaint, incorrectly citing to 47 U.S.C. § 227(c)(1). [DN 1, p. 5]. As the Court has already explained, Plaintiff probably intended to cite 47 U.S.C. § 227(e), the subsection of the Act that prohibits such conduct. However, as previously explained, § 227(e) does not provide for a private right of action. *See, e.g.*, *SunPath*, 2020 WL 8840311, at *6–7. Accordingly, the Court will deny Plaintiff's "Motion for Continuation of Claims," [DN 15], and "Motion for Additional Claims," [DN 16], as futile. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." (citing *Thiokol Corp. v. Dept. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993))).

Plaintiff moved to amend his complaint a third time in response to Defendant's Motion to Dismiss. In that motion, Plaintiff seeks to add a cause of action for violation of 47 U.S.C. § 227(b)(3). [DN 18]. Defendant responded to this motion in his reply brief relating to his Motion to Dismiss. [DN 20, pp. 7–9]. In that reply brief, Defendant states his belief that the amendment is futile and acknowledges that "[u]nder ordinary circumstances," the Court should deny the motion to amend. [DN 20, p. 7]. Defendant states, however, that "in the interest of judicial economy and because Hall filed *pro se*, Stankey will not oppose the filing of the

15

amendment and will instead address Hall's new claims in this reply brief," rather than file a separate response. *Id.*

Though Defendant states that he does not oppose the filing of the amendment, he argues that the amended version of the complaint must be dismissed for failure to state a claim under Rule 12(b)(6). The Court agrees with that analysis, for the reasons stated below. Because the proposed amended complaint cannot survive a Rule 12(b)(6) motion to dismiss, the Court will deny the motion to amend as futile. *See Rose*, 203 F.3d at 421.

In his third motion to amend, Plaintiff seeks to add a new claim under 47 U.S.C. § 227(b)(3). [DN 18]. That provision allows a person to bring a claim "based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation" and allows for the recovery of actual damages. In other words, it creates a private right of action for violations of certain provisions of the TCPA. Among those provisions is 47 U.S.C. § 227(b)(1)(B), which makes it unlawful to "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," with certain exceptions.

However, as noted above, Plaintiff must provide more than mere conclusory allegations that Defendant personally participated in violations of the TCPA. *See, e.g.*, *Bank*, 2019 WL 7878570, at *7. In his amended complaint, Plaintiff again makes conclusory allegations that Defendant personally participated in the alleged TCPA violations, without any specific factual support. For example, he alleges that Defendant wants to "permanently abandon" land lines, and he is "the only one with the power, ability, means, and motive to have those calls made from a telecommunications facility, under his control," in an attempt to pressure Plaintiff to disconnect his home phone line. [DN 18]. As noted above, courts have consistently held that such

16

threadbare allegations are insufficient, as noted above to state a claim for a TCPA violation. *See, e.g.*, *Lucas*, 2019 WL 3349957, at *7. Thus, Plaintiff's third proposed amended complaint could not survive a Rule 12(b)(6) motion to dismiss. The Court will therefore deny Plaintiff's "Motion for to Amend Complaint to Add 47 U.S.C. § 227(B)(3)," [DN 18], as futile. *See Rose*, 203 F.3d at 421 (citation omitted).

### E. Plaintiff's "Motion for Demand the Right to a Jury Trial," [DN 10], and "Motion for Schedule a Jury Trial at Next Available Date," [DN 21]

Lastly, Plaintiff has filed two motions demanding a jury trial date. [DN 10; DN 21]. Because the Court grants Defendant's Motion to Dismiss, [DN 17], this matter will be dismissed, and Plaintiff's remaining motions for a jury trial will be dismissed as moot.

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

1. Plaintiff's Motion to Expunge Waiver of Service of Summons, [**DN 8**], is **DENIED**;

2. Defendant's Motion for Extension of Time, [**DN 9**], is **DENIED as moot**;

3. Plaintiff's "Motion for Demand the Right to a Jury Trial," [**DN 10**], is **DENIED as moot**;

4. Plaintiff's Motion to Deny Defendant's Motion for Extension of Time, [**DN 11**], is **DENIED as moot**;

5. Plaintiff's "Motion for Enter a Default Judgement Against the Defendant," [**DN 13**], is **DENIED**;

6. Plaintiff's "Motion for Continuation of Claims," [**DN 15**], is **DENIED**;

7. Plaintiff's "Motion for Additional Claims," [**DN 16**], is **DENIED**;

8. Defendant's Motion to Dismiss, [**DN 17**], is **GRANTED**;

9. Plaintiff's "Motion for to Amend Complaint to Add 47 U.S.C. § 227(B)(3)," [**DN 18**], is **DENIED**; and

10. Plaintiff's "Motion for Schedule a Jury Trial at Next Available Date," [**DN 21**], is **DENIED as moot**.

11. This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

cc: Counsel of Record
    Plaintiff, pro se